UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARROLL HARTLOVE,

      Petitioner,

v.                              Case No. 8:21-cv-1171-CEH-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Carroll Hartlove, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 17). Hartlove filed a reply. (Doc. 23). Upon consideration, the petition will be **DENIED**.

## I.  Background

This case arises from Hartlove's sexual abuse of two unrelated children—L.S. and J.T.—between 1999 and 2003. L.S.'s mother married Hartlove in 1996, and the family lived together in a house in Nokomis, Florida. (Doc. 17-2, Ex. 28, at 441-43). Hartlove began to sexually abuse L.S., his stepdaughter, when she was six or seven years old. (*Id.* at 46-48). On several occasions, he touched, licked, and digitally penetrated her vagina, forced her to masturbate him and perform oral sex on him, and rubbed his penis against her vagina and anus. (*Id.* at 46-54, 62, 91). L.S. and her mother

1

moved out of the house in May 2001, but L.S. subsequently visited Hartlove every other weekend. (*Id.* at 54-55, 444-45). The sexual abuse continued during these visits. (*Id.* at 56).

Around the time that the abuse began, L.S. became friends with J.T. (*Id.* at 55). They lived in the same neighborhood, and J.T. was two years older than L.S. (*Id.*) Sometime after L.S.'s mother left Hartlove, he began to date J.T.'s mother. (*Id.* at 218). J.T., her mother, and her siblings eventually moved into Hartlove's house. (*Id.* at 139, 218-19). At that point, Hartlove began to sexually abuse J.T. (*Id.* at 218, 220). He repeatedly touched her vagina and buttocks; he also asked her twice to perform oral sex on him, but she refused. (*Id.* at 222-23, 245). Sometimes Hartlove abused L.S. and J.T. at the same time. (*Id.* at 56, 224, 226-27). J.T., her mother, and her siblings moved out of Hartlove's house in the summer of 2003. (*Id.* at 150).

Hartlove was tried only for his sexual abuse of L.S. and J.T. (*Id.*, Exs. 27, 29, 36). But the jury also heard about his molestation of F.T., J.T.'s younger sister. (*Id.*, Ex. 28, at 365-66, 370). On several occasions, Hartlove touched F.T.'s chest and rubbed her thigh. (*Id.* at 370-73). Once, in the kitchen, Hartlove unzipped his shorts, pulled F.T. close to him, and "stuck his [penis] on [her] mouth." (*Id.* at 376). On another occasion, J.T. heard "mumbles" and "squeaks" coming from the master bedroom. (*Id.* at 302). She entered the room and saw F.T. "straddling" Hartlove with "just her underwear on." (*Id.* at 229-30). J.T. removed F.T. from Hartlove and "dragged her into the living room." (*Id.* at 230).

J.T. disclosed the abuse to law enforcement in the summer of 2003, and Hartlove was arrested. (*Id.* at 291-92, 296-97, 816). L.S. was interviewed as part of the investigation into J.T.'s allegations. (*Id.* at 142). During her interview, L.S. denied that Hartlove had sexually abused her. (*Id.* at 148). L.S. later explained that she was "scared" and did not want "give . . . up" the "leniencies" Hartlove afforded her when she visited him on weekends. (*Id.* at 79). Specifically, Hartlove allowed her to drink alcohol, smoke cigarettes, and "go out with [her] friends whenever [she] wanted." (*Id.* at 128).

Approximately one month after the disclosure, J.T. recanted her allegations of abuse, and the charges against Hartlove were dropped. (*Id.* at 241, 692-93, 800). J.T. subsequently explained that, when she first accused Hartlove of abusing her, her mother "acted like she hated" her. (*Id.* at 239-40). Among other things, her mother hit her, "call[ed] [her] a liar," and "call[ed] [her] a whore." (*Id.* at 240). Once she recanted, however, her mother "started treating [her] better." (*Id.* at 241).

Sometime later, L.S. and J.T. stopped being friends, and J.T. moved to New York. (*Id.* at 241). The two did not speak with each other while J.T. lived out of state. (*Id.* at 241-42). L.S. and J.T. reunited in the summer of 2008, when J.T. returned to Florida to live with her grandmother. (*Id.* at 178, 343). L.S. apologized to J.T. for not "stay[ing] by [her] side" when she had accused Hartlove of abusing her. (*Id.* at 86). J.T. eventually persuaded L.S. to disclose the sexual abuse to L.S.'s mother. (*Id.* at 87-88). J.T. urged this course of action because L.S.'s younger sister was visiting "theme

3

parks" in Orlando with Hartlove and thus could be "in danger." (*Id.* at 87, 350). Later that day, J.T. and L.S. told L.S.'s mother about what Hartlove had done to them. (*Id.* at 88-89). Law enforcement was notified, and Hartlove was arrested again. (*Id.* at 544-45).

Following a jury trial, Hartlove was convicted of four counts of sexual battery on a child under twelve years of age, two counts of lewd or lascivious molestation on a child under twelve years of age, one count of the lesser-included offense of battery, and one count of lewd or lascivious conduct on a child under sixteen years of age.[1] (*Id.*, Ex. 29). He received a total sentence of life imprisonment. (*Id.*, Ex. 31). After an unsuccessful direct appeal, Hartlove filed a petition alleging ineffective assistance of appellate counsel. (*Id.*, Exs. 41, 44). That petition was denied without explanation. (*Id.*, Ex. 45). Next, Hartlove moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 51, 53, 54). The postconviction court summarily denied some claims; the rest were rejected after an evidentiary hearing. (*Id.*, Ex. 55; Doc. 17-3, Exs. 58, 59, 60). The appellate court affirmed the denial of relief without opinion. (Doc. 17-3, Ex. 66). This federal habeas petition followed. (Doc. 1).

## II.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief

---

[1] Hartlove's first trial ended in a mistrial; he was convicted at his second trial. (Doc. 17-2, Ex. 21, at 81; Doc. 17-2, Ex. 29). The Court discusses the circumstances of the mistrial below.

can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas

corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Hartlove's convictions and sentences without discussion. It likewise affirmed the denial of postconviction relief without explanation. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B.    Exhaustion of State Remedies; Procedural Default

A petitioner must exhaust the remedies available in state court before a federal court can grant habeas relief. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

6

A federal court may stay—or dismiss without prejudice—a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Also, a petitioner's failure to comply with a state procedural rule governing the proper presentation of a claim bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state-law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair" manner. *Id.* (citing *Card v. Dugger*, 911 F.2d 1494, 1516-17 (11th Cir. 1990)).

To excuse a procedural bar on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal

law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536-37 (2006).

### C. Ineffective Assistance of Counsel

Hartlove alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Hartlove must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Hartlove must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."

*Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation and citation omitted). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III.   Discussion

### A.   Grounds One, Two, Four, Ten, Twenty-One, and Twenty-Three— Procedurally Defaulted Claims

Hartlove alleges that his arrest was unconstitutional because law enforcement lacked probable cause to believe he committed a crime (Ground One, Sub-Claim A and Ground Two); the detective who interviewed him violated his *Miranda* rights, used "psychological coercion," and submitted a "fraudulent" probable-cause affidavit (Ground One, Sub-Claim B); the judge who presided over his trial "was not impartial or neutral" (Ground Four); the prosecution violated his right to due process by making "improper closing remarks" (Ground Ten); the prosecution violated his right to due process by failing to file a "written and signed" version of a motion *in limine* (Ground Twenty-One); and the criminal case against him was "unauthorized" because the

prosecution failed to obtain a "direct sworn statement of alleged crimes" from the victims (Ground Twenty-Three). (Doc. 1 at 12-19, 24, 37-41, 69-70, 74-75).

Respondent correctly contends that these claims are procedurally defaulted. (Doc. 17 at 7-10, 18-19, 28-29, 52-53, 56-57). Hartlove raised each claim for the first time during his Rule 3.850 proceedings. (Doc. 17-2, Ex. 54, at 2-6, 11-14, 29-30; Doc. 17-3, Exs. 85, 92, 99). The postconviction court rejected Grounds One, Two, Four, Ten, and Twenty-One as procedurally barred, explaining that they "should have been raised, if at all, on direct appeal." (Doc. 17-2, Ex. 54, at 4, 7, 20; Doc. 17-3, Exs. 93, 100). As for Ground Twenty-Three, the postconviction court held that the claim was "procedurally barred as untimely" because it "was not filed within two years from the date [Hartlove's] judgment and sentence became final," as is required by Rule 3.850(b). (Doc. 17-3, Ex. 86, at 2). Because "the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds," these claims are procedurally defaulted. *LeCroy v. Sec'y, Fla. Dep't Corr.*, 421 F.3d 1237, 1260 n.25 (11th Cir. 2005).

To overcome the default, Hartlove must show either cause and prejudice or a miscarriage of justice. *See Mincey v. Head*, 206 F.3d 1106, 1135 (11th Cir. 2000) ("It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'"). Hartlove apparently seeks to excuse the default

on the ground that his appellate counsel was ineffective for failing to raise his claims on direct appeal. (Doc. 1 at 18-19, 24, 42, 70, 75). This argument fails.

"A showing of ineffective assistance of appellate counsel in failing to raise a claim on direct appeal can constitute 'cause' so long as the ineffective assistance occur[red] during a stage when a petitioner had a constitutional right to counsel, *and the ineffective-assistance claim itself is both exhausted and not procedurally defaulted*." *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 (11th Cir. 2020) (emphasis added). As noted above, Hartlove filed a petition alleging ineffective assistance of appellate counsel. (Doc. 17-2, Ex. 44). But nowhere in that petition did he fault appellate counsel for failing to raise the claims in Grounds One, Two, Four, Ten, Twenty-One, or Twenty-Three. (*Id.*) Accordingly, any such ineffective-assistance claim "is procedurally defaulted and cannot be considered as cause for the default of [Hartlove's] trial court error claim[s]." *Dowling v. Sec'y for Dep't of Corr.*, 275 F. App'x 846, 847 (11th Cir. 2008).

## B.   Ground Three—Double Jeopardy

Hartlove's first trial ended in a mistrial, and he was convicted at his second trial. (Doc. 17-2, Ex. 21, at 81; Doc. 17-2, Ex. 29). Hartlove contends that the retrial violated the Double Jeopardy Clause because the prosecution "goaded" him into seeking a mistrial during his first trial. (Doc. 1 at 20-22).

Immediately after opening statements at the first trial, Hartlove objected to any testimony about acts of sexual abuse that were "not alleged in the information." (Doc. 17-2, Ex. 21, at 45). Hartlove also argued that, because each count of the information

alleged only "one particular act," the prosecution should be prohibited from eliciting testimony about "multiple acts" for each count. (*Id.* at 50). In response, the prosecutor sought leave to "amend the information" to add the phrase "on one or more occasions" to each count. (*Id.* at 51). The court denied leave to amend. (*Id.* at 55, 57-58). It also prohibited the prosecution from presenting testimony about "specific acts" that were not alleged in the information unless those acts were "inextricably intertwined" with the charged conduct. (*Id.* at 47-48). The prosecutor moved for a mistrial, explaining that she had "said in opening statements . . . that this occurred over and over and over." (*Id.* at 55). The court denied the motion and indicated that it would give the prosecution "some latitude regarding leading" the victims as to "when" and "where" the "specific act[s]" occurred. (*Id.* at 55-56).

The prosecution's first witness was J.T. (*Id.* at 61). The information alleged only that Hartlove had digitally penetrated J.T.'s vagina and used "his penis and/or his mouth [to] penetrate or have union with" J.T.'s vagina. (*Id.*, Ex. 7, at 55-56). The prosecutor asked J.T. to describe the first time Hartlove had "touch[ed] [her] inappropriately." (*Id.*, Ex. 21, at 74-75). J.T. testified that Hartlove "grabbed [her] chest" when she spent the night at his house. (*Id.* at 75). Hartlove moved for a mistrial, pointing out that the information did "not allege[]" that he had "touched [J.T.'s] chest." (*Id.* at 76). The prosecutor responded: "That's fine as long as we can retry it. I'll amend the information and problem solved." (*Id.*)

The court granted the motion for mistrial. (*Id.* at 81). It found that "the actions by the State were not deliberate, were not intentional, [and] were not done for the purpose of seeking a mistrial." (*Id.*) The court explained that Hartlove's motion to exclude evidence about uncharged acts "was made this morning," and that the court "had to make a ruling and instruct the State" after familiarizing itself with the relevant "case law." (*Id.*) The court then noted that the mistrial was "not anyone's fault." (*Id.*) Before the court recessed, the prosecutor "put on the record" that, based on her "notes from [J.T.'s] previous testimony," she had believed that J.T. would testify to an act "that was alleged in the information." (*Id.* at 88). The prosecutor did not expect J.T. to describe the uncharged act of "fondling [] the chest." (*Id.*)

Following the mistrial, the prosecution amended the information, adding several new counts and alleging that Hartlove committed each offense "on one or more occasions." (*Id.*, Exs. 24, 27). Hartlove moved to dismiss the charges on double jeopardy grounds, arguing that the prosecution had intentionally "provoke[d] [him] into moving for a mistrial" during J.T.'s testimony. (*Id.*, Ex. 25, at 161-62). Hartlove faulted the prosecution for failing "to take the basic step of informing its witnesses that much of the evidence the State intended on introducing was now ruled to be inadmissible." (*Id.* at 162).

The court held a hearing on the motion. (*Id.*, Ex. 26). During the hearing, the parties stipulated that "no staff from the State spoke with the witnesses . . . after the [c]ourt made its ruling restricting the evidence that could be presented" at the first trial. (*Id.* at 2). The prosecutor explained, however, that she "didn't have a chance to

13

discuss" the court's ruling with J.T. before she began to testify because "the jury []

walk[ed] in the door" immediately after the ruling. (*Id.* at 10). The prosecutor also

reiterated that, based on her "notes," J.T. was "supposed to [provide] a different

answer" to the question about the first time Hartlove touched her inappropriately. (*Id.*

at 10-11). For that reason, the prosecutor "thought that the question [she] was asking

was safe"—that is, compliant with the court's ruling restricting the evidence to the acts

of sexual abuse alleged in the information. (*Id.* at 11). The prosecutor stated that she

"would never, ever go against the [c]ourt's ruling intentionally," and that she "would

never in bad faith do anything to cause a mistrial, and [she] did not do so in this case."

(*Id.* at 12).

The court ultimately denied the motion to dismiss, ruling that double jeopardy

did not bar a retrial:

> [K]nowing me, as you all know, I like to move cases, and I bring the jury
> in, and I force everybody—say, Get ready, let's go. That's the way I am.
> Sure, the State could have said, Judge, time out, [w]e need time to talk
> to the witness, although I pretty well know that I like to move cases along.
> The jury was waiting. I don't like them sitting back there. I can
> understand perhaps the State being pressured, although the prosecutor
> didn't use that word. But I did state, according to the record, "Let's bring
> the jury in."
>
> Considering the entire context of how this all occurred, and that's what
> I'm doing because that's what I have to do, and having the benefit, as I
> said, of being aware of the entire situation, the [c]ourt is going to find that
> there was not [] intentional misconduct on the part of the prosecutor and
> that the conduct was not designed to provoke a mistrial. As a result
> thereof, I'm going to deny the motion to dismiss.

(*Id.* at 15-16).

That ruling was reasonable. "The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606 (1976). It does not, however, "offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). For example, "[t]he Double Jeopardy Clause does not bar retrial after the grant of a defendant's motion for mistrial unless the prosecution intentionally goaded the defendant into moving for a mistrial." *United States v. Vallejo*, 297 F.3d 1154, 1162 (11th Cir. 2002). "Mere overreaching or bad faith does not implicate double jeopardy unless the prosecutor actually intended to provoke the defendant's motion [for mistrial]." *United States v. Shelley*, 405 F.3d 1195, 1200 (11th Cir. 2005). "The court's determination of the prosecutor's intent is a finding of fact." *Vallejo*, 297 F.3d at 1162.

Here, the second trial took place after Hartlove successfully moved for a mistrial. Thus, double jeopardy did not bar the retrial "unless the prosecution intentionally goaded [Hartlove] into moving for a mistrial." *Id.* As explained above, the trial court expressly found that "there was not [] intentional misconduct on the part of the prosecutor and that the conduct was not designed to provoke a mistrial." (Doc. 17-2, Ex. 26, at 16). That factual finding binds this Court unless Hartlove shows by "clear and convincing evidence" that it was incorrect. 28 U.S.C. § 2254(e)(1). He has not done so. Indeed, the court's ruling finds ample support in the record. The prosecutor twice explained that the testimony that caused the mistrial—J.T.'s

statement that Hartlove had touched her chest—was unexpected. (Doc. 17-2, Ex. 21, at 88; *see also* Doc. 17-2, Ex. 26, at 10-11). According to the prosecutor, her "notes from [J.T.'s] previous testimony" led her to believe that J.T. would testify to an act "that was alleged in the information"—not the uncharged act of touching her chest. (*Id.*, Ex. 21, at 88). Moreover, the prosecutor stated that she "didn't have a chance to discuss" the court's ruling with J.T. because "the jury [] walk[ed] in the door" immediately after the ruling. (*Id.*, Ex. 26, at 10). That explanation is consistent with the court's own description of the events leading up to the mistrial. (*Id.* at 15-16).

In these circumstances, the trial court reasonably concluded that the prosecution did not intend to "provoke a mistrial." (*Id.* at 16). And without "deliberate prosecutorial misconduct," double jeopardy does not bar a retrial after the grant of a defendant's motion for mistrial. *Vallejo*, 297 F.3d at 1163. Accordingly, the trial court reasonably concluded that double jeopardy did not bar Hartlove's second trial.

## C.     Ground Five—Comment on Right to Remain Silent

Hartlove contends that the detective who conducted his post-*Miranda* interview impermissibly commented on his Fifth Amendment right to remain silent. (Doc. 1 at 25-27). The challenged comment came during the detective's trial testimony. The prosecutor asked the detective whether he was able to locate Hartlove after law enforcement interviewed the victims about their allegations of sexual abuse. (Doc. 17-2, Ex. 28, at 543-44). The following exchange ensued:

Q. Did you immediately find him or did it take a little while?

A. I think I found him the same day that I did the interviews.

Q. Did you ask him to come to the station?

A. I did.

Q. And did he agree to come with you?

A. He did not.

Q. What did you do?

A. I arrested him.

(*Id.* at 545). Hartlove immediately objected and moved for a mistrial, arguing that the detective made a "clear comment on [Hartlove's] right to remain silent" by testifying that Hartlove had refused to go to the police station. (*Id.* at 546). The court declined to grant a mistrial but issued the following curative instruction to the jury: "The fact that the defendant refused to come down to the police station is totally irrelevant, and you should not consider that fact whatsoever, and you should disregard that statement and not consider it at all." (*Id.* at 547).

Respondent correctly contends that Hartlove failed to exhaust this claim. (Doc. 17 at 19-20). "[A] petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015). Accordingly, "a petitioner [does] not satisfy the exhaustion requirement merely by presenting the state court with all the facts necessary to support the claim, or by making a somewhat similar state-law claim." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351-52 (11th Cir. 2012). Here, Hartlove argued on direct appeal that "[t]he detective's testimony was

fairly susceptible of being interpreted by the jury as a comment on [his] right to remain silent." (Doc. 17-2, Ex. 39, at 48). But he did not argue that the detective's comment violated his *federal* right to remain silent. (*Id.* at 44-49). Nor did he cite any provision of the federal constitution. (*Id.*)

This omission deprived the state court of "the opportunity to apply controlling legal principles to the facts bearing upon [the] claim." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The "controlling legal principles" here differed depending on whether the claim arose under state or federal law. *Id.* As the Florida Supreme Court has explained, "the privilege against self-incrimination provided in the Florida Constitution offers *more* protection than the right provided in the Fifth Amendment to the United States Constitution." *State v. Horwitz*, 191 So. 3d 429, 439 (Fla. 2016). Thus, the state court did not have a "meaningful opportunity" to address Hartlove's federal claim. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005); *see also Lucas*, 682 F.3d at 1352-53 (petitioner's allusion to "constitutional right of confrontation" did not "fairly apprise[] the state court of his *federal* constitutional right-to-confrontation claim" because "in addition to the Sixth Amendment right of confrontation guaranteed by the U.S. Constitution, the Florida Constitution also guarantees a right of confrontation").

Hartlove cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result,

Ground Five is procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Hartlove has not shown that an exception applies to overcome the default, this claim is barred from federal habeas review.

Even if Hartlove had exhausted his claim, he would not be entitled to relief. Hartlove contends that the detective impermissibly commented on his right to remain silent by testifying about his refusal to go to the police station. (Doc. 1 at 25-27). To prevail on federal habeas review, Hartlove must show that the rejection of this claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122; *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

The Supreme Court has never "squarely established" that the Fifth Amendment precludes a prosecutor from using a defendant's pre-arrest silence as substantive evidence of guilt. *Knowles*, 556 U.S. at 122. Indeed, the Supreme Court has expressly "le[ft] open the question of whether, in line with the Fifth Amendment, a prosecutor may comment on [a] defendant's pre-custodial silence." *United States v. Zarauskas*, 814 F.3d 509, 515 (1st Cir. 2016) (citing *Salinas v. Texas*, 570 U.S. 178 (2013)); *see also Mercado v. Sec'y, Fla. Dep't of Corr.*, No. 6:19-cv-1755-PGB-LRH, 2022 WL 2103057, at *14 & n.3 (M.D. Fla. Feb. 7, 2022) (noting that "the Supreme Court has not yet decided" whether "the government may comment on a defendant's non-custodial, pre-*Miranda* silence"). Notably, in the Eleventh Circuit, "[t]he government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings." *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991).

Here, Hartlove's silence—that is, his refusal to voluntarily accompany the detective to the police station—"occurred prior to the time that he [was] arrested and given his *Miranda* warnings." *Id.* Indeed, the detective testified that he made the arrest *after* Hartlove had refused to "come with [him]" to the police station. (Doc. 17-2, Ex. 28, at 545). Because the Supreme Court has never clearly established that the Fifth Amendment forbids the use of such silence as substantive evidence of guilt, Hartlove is not entitled to relief on Ground Five.

#### D.    Ground Six—*Brady* Claim

Hartlove contends that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose allegedly "favorable evidence." (Doc. 1 at 28-29). According to Hartlove, the prosecution withheld that L.S. told law enforcement during an interview that Hartlove had shown her "child pornography." (*Id.* at 28). Specifically, L.S. recounted during the interview that "[t]here was one time [Hartlove] pulled up a site. It was probably like a . . . 12, 13-year-old girl going down on a guy." (Doc. 17-2, Ex. 55, at 126). Hartlove says he first learned of this allegation at trial, when L.S. testified as follows: "Well, [Hartlove] would show me, you know, like regular pornography, like a man and a woman and stuff like that. And he had magazines and stuff. And then it kind of progressed into kiddie porn." (*Id.*, Ex. 28, at 62). Hartlove contends that, had the prosecution disclosed L.S.'s statement before trial, he would have been in a better position to "prepar[e] a proper defense." (Doc. 1 at 29).

The postconviction court rejected this claim, holding that it was "conclusively refuted by the record." (Doc. 17-2, Ex. 55, at 5). The court noted that the "prior statement of L.S. [was] found in the transcript of a DVD recording of her interview" with law enforcement. (*Id.*) The court further explained that "[t]his interview was disclosed to the defense as part of the State's discovery exhibit served September 26, 2008"—a year before the second trial. (*Id.*) Thus, because "the defense possessed the referenced information before trial," the court found "no *Brady* violation." (*Id.*)

The rejection of this claim was reasonable. To establish a *Brady* violation, a defendant must prove "(1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant [did] not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *Baxter v. Thomas*, 45 F.3d 1501, 1506 (11th Cir. 1995).

Hartlove cannot establish a *Brady* violation because he possessed L.S.'s interview transcript before trial. *See United States v. Miller*, 796 F. App'x 582, 586 (11th Cir. 2019) ("Because . . . [defendant] already possessed the information contained in the [allegedly suppressed] affidavit before trial, his *Brady* claim must also fail."). Indeed, Hartlove concedes in his petition that counsel "did receive a copy of L.S.'s interview" before trial. (Doc. 1 at 28). Because Hartlove possessed the evidence that was allegedly suppressed, the postconviction court correctly rejected his *Brady* claim.[2] *See Grim v. Buss*, No. 3:08-cv-2-MCR, 2011 WL 1299930, at *17 (N.D. Fla. Mar. 31, 2011) ("[A] *Brady* violation does not occur if the defendant possessed the evidence or could have obtained it with any reasonable diligence.").

---

[2] Even if L.S.'s interview had been withheld, Hartlove fails to establish prejudice—that is, "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014).

### E.    Ground Seven—Denial of Motion for Mistrial

Hartlove argues that the trial court violated his right to due process and a fair trial by declining to declare a mistrial after L.S. testified that he had shown her "kiddie porn." (Doc. 1 at 30). Immediately after L.S. offered this testimony, Hartlove moved for a mistrial, arguing that "child pornography is a separate crime and [the prosecution] never [] alleged, gave any type of warning that they were going to be including allegations that [] Hartlove possessed child pornography." (Doc. 17-2, Ex. 28, at 63, 66). The court denied the motion for mistrial but instructed the jury to "please disregard [L.S.'s] use of the words 'kiddie porn.'" (*Id.* at 69-70, 73). Hartlove now contends that the failure to declare a mistrial violated his constitutional rights because "possession of child pornography is a felony . . . and [he] was not charged with [that] offense." (Doc. 1 at 31).

Respondent is correct that this claim is unexhausted. (Doc. 17 at 24). As noted above, proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). To do that, a petitioner must do more than "scatter some makeshift needles in the haystack of the state court record." *McNair*, 416 F.3d at 1303. Here, Hartlove argued on direct appeal that L.S.'s reference to "kiddie porn" "destroyed" his "right to a fair trial." (Doc. 17-2, Ex. 39, at 40). But he never asserted a violation of his *federal* right to a fair trial or due process. As the Eleventh Circuit has explained, the bare assertion that a defendant "was denied due process and a fair trial" is "insufficient to present" a federal claim because "this language could just be

asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause." *Zeigler v. Crosby*, 345 F.3d 1300, 1308 n.5 (11th Cir. 2003); *see also Williams v. Sec'y, Dep't of Corr.*, No. 8:12-cv-973-JDW-TGW, 2015 WL 4040521, at *7 (M.D. Fla. June 25, 2015) ("Petitioner's cursory and vague statement in his Initial Brief that 'the State clearly violated the defendant's right to a fair trial' . . . [was] insufficient to present fairly to the state appellate court a federal constitutional issue."). "Under these circumstances, [Hartlove] cannot be said to have fairly apprised the state court of his federal . . . claim."[3] *Preston*, 785 F.3d at 459.

Hartlove cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3). As a result, this claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. And because Hartlove has not shown that an exception applies to overcome the default, Ground Seven is barred from federal habeas review.

## F. Ground Eight—*Giglio* Claim

Hartlove contends that the prosecution violated *Giglio v. United States*, 405 U.S. 150 (1972), by failing to correct allegedly false statements by three witnesses at trial—L.S., J.T., and F.T. (Doc. 1 at 33-34). According to Hartlove, at several points during the trial, these witnesses offered testimony that was inconsistent with their deposition

---

[3] In the relevant portion of his appellate brief, Hartlove cited a single federal case—*United States v. Lamb*, 945 F. Supp. 441 (N.D.N.Y. 1996). (Doc. 17-2, Ex. 39, at 42). But he relied on that case solely for the proposition that child pornography carries the "imprimatur of severe social stigma." (*Id.* (quoting *Lamb*, 945. F. Supp. at 460)). And *Lamb* did not address whether a reference to uncharged possession of child pornography violates a defendant's right to due process or a fair trial. *Lamb*, 945 F. Supp. at 446. Thus, Hartlove's citation of this case was insufficient to alert the state court to the federal nature of his claim.

testimony or the statements they made to law enforcement. (*Id.* at 33). For example, J.T. allegedly testified inconsistently at trial and at her deposition about the "number of times [Hartlove] touched [her] crotch." (Doc. 17-2, Ex. 54, at 10). Likewise, L.S. allegedly testified inconsistently about the number of times Hartlove "gave oral to [her]." (*Id.* at 9). And F.T. supposedly offered inconsistent testimony about the "[r]oom where the alleged acts [of sexual abuse] occurred." (*Id.* at 10). Hartlove argues that the prosecutor knew the victims' trial testimony was false because she was "present at [the] depositions and hear[d] their testimon[y]." (Doc. 1 at 33).

Respondent contends that this claim is procedurally defaulted. (Doc. 17 at 25). The Court need not reach that issue because, even under *de novo* review, the *Giglio* claim fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

"To establish a *Giglio* claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, *i.e.*, that there is any reasonable likelihood that the false testimony could . . . have affected the judgment." *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1348 (11th Cir. 2011). "[T]he suggestion that a statement may have been false is simply insufficient [to establish a *Giglio* violation]; the defendant must conclusively show that the statement was actually false." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1313 (11th Cir. 2005). "[A] prior statement

that is merely inconsistent with a government witness's testimony is insufficient to establish" that the government knowingly used false testimony. *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010); *see also Hays v. State of Alabama*, 85 F.3d 1492, 1499 (11th Cir. 1996) (finding no due process violation where "there ha[d] been no showing that [the witness's] later, rather than earlier, testimony was false").

Hartlove's *Giglio* claim fails because he cannot show that "the prosecutor knowingly used perjured testimony" from L.S., J.T., or F.T. *Guzman*, 663 F.3d at 1348. Hartlove argues that the victims' trial testimony was false because it was inconsistent with prior statements they made during depositions and interviews with law enforcement. But even if these witnesses' "[trial] testimony was inconsistent with [their] prior statements, that is not sufficient to establish the knowing use of false testimony." *White v. Sec'y, Fla. Dep't of Corr.*, No. 15-12950-F, 2015 WL 13936935, at *9 (11th Cir. Dec. 18, 2015); *see also Sicola v. Dep't of Corr.*, No. 8:18-cv-486-KKM-TGW, 2021 WL 9528089, at *5 (M.D. Fla. May 14, 2021) ("The mere fact that the brother's trial testimony was inconsistent with his previous deposition testimony does not establish that his trial testimony was false."). Accordingly, the *Giglio* claim lacks merit.[4]

---

[4] Hartlove appears to contend that the prosecution "solicit[ed] false testimony" from the victims by asking "leading questions" at trial. (Doc. 1 at 33-34). But he fails to "conclusively show" that the statements the victims made in response to these questions were "actually false," as is required to establish a *Giglio* violation. *Maharaj*, 432 F.3d at 1313.

### G.    Ground Nine—Failure to Obtain Transcript of *Voir Dire*

Hartlove contends that appellate counsel provided ineffective assistance by failing to obtain a "complete transcript" of his trial. (Doc. 1 at 36). Specifically, Hartlove faults appellate counsel for not ordering a "transcript of the *voir dire*."[5] (*Id.*) According to Hartlove, this omission "denied [him] a meaningful appeal," as "there [was] no guarantee that he had a fair, unbiased, and impartial jury." (*Id.*) Hartlove does not, however, identify any issues related to the *voir dire* that could have been raised on direct appeal. (*Id.*)

Hartlove raised this claim in his petition alleging ineffective assistance of appellate counsel. (Doc. 17-2, Ex. 44, at 17). The appellate court rejected it without explanation. (*Id.*, Ex. 45). Thus, Hartlove must "show[] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. He cannot do so.

"A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008). Here, even assuming that appellate counsel was deficient for not ordering a copy of the *voir dire* transcript, Hartlove's claim still fails for lack of prejudice. As noted above, Hartlove identifies no issues related to the *voir dire* that could have been raised on direct appeal. (Doc. 1 at 36). Thus, there is no basis to conclude that any "neglected claim[s] would have a reasonable probability

---

[5] The copy of the trial transcript provided to this Court does not contain the *voir dire*. (Doc. 17-2, Ex. 28).

of success on appeal," as is required to establish prejudice in this context. *Philmore v. McNeil*, 575 F.3d 1251, 1265 (11th Cir. 2009). Because "there is no indication or allegation that there were any issues concerning jury selection," Hartlove fails to show that he "sustained prejudice" from counsel's "failure to [obtain] a transcript of the jury selection." *Pearson v. Sec'y, Fla. Dep't of Corr.*, No. 6:15-cv-81-PGB-DAB, 2016 WL 7104169, at *4 (M.D. Fla. Dec. 6, 2016). Therefore, the state court correctly rejected his claim of ineffective assistance of appellate counsel.

### H.     Ground Twelve—Sufficiency of the Evidence[6]

Hartlove contends that his convictions violated due process because "the evidence presented was legally insufficient to prove the elements" of the crimes. (Doc. 1 at 46). According to Hartlove, "[t]his case was nothing more than a he said/she said as there was no physical evidence, no DNA, no psychological or medical exams, [and] extensive inconsistencies and impeachments." (*Id.*) Thus, in Hartlove's view, "[t]he facts presented at trial . . . failed to prove the crimes as a matter of law beyond a reasonable doubt." (*Id.*)

Respondent argues that this claim is procedurally defaulted, (Doc. 17 at 32-33), but the Court need not reach that issue because the sufficiency challenge plainly fails on the merits. *See Dallas*, 964 F.3d at 1307 ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

---

[6] Ground Eleven alleges a denial of due process based on "cumulative prosecutorial misconduct." (Doc. 1 at 43). Because this claim incorporates issues raised in other grounds, the Court addresses Ground Eleven at the conclusion of this Order.

The Due Process Clause of the Fourteenth Amendment requires the State to prove beyond a reasonable doubt each element of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). The governing question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 463 (11th Cir. 2015). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

A rational jury could have found beyond a reasonable doubt that Hartlove committed each offense. Hartlove was convicted of four counts of sexual battery on L.S., a child under twelve years of age. (Doc. 17-2, Ex. 29, at 239-40). The prosecution alleged that Hartlove (1) digitally penetrated L.S.'s vagina, (2) used his penis to "penetrate or have union with" L.S.'s vagina and anus, and (3) performed oral sex on L.S., who also performed oral sex on him. (*Id.*, Ex. 27, at 230-31; *see also* Fla. Stat. § 794.011(2)(a)). At trial, L.S. testified that each of these acts occurred on several occasions when she was under the age of twelve. (Doc. 17-2, Ex. 28, at 46-54, 62, 91, 100). Moreover, Hartlove was in his forties when the offense conduct took place. (*Id.* at 474-75). Accordingly, the evidence at trial was sufficient to establish beyond a reasonable doubt that Hartlove committed sexual battery on L.S.

Hartlove was also convicted of lewd or lascivious molestation of L.S. (*Id.*, Ex. 29, at 240). Specifically, the prosecution alleged that Hartlove "unlawfully touch[ed]" L.S.'s "vagina," "vaginal area," "breasts," "buttocks," or the clothing covering these body parts. (*Id.*, Ex. 27, at 231; *see also* Fla. Stat. § 800.04(5)(b)). L.S.'s trial testimony was sufficient to establish beyond a reasonable doubt that Hartlove committed this offense. For example, L.S. testified that on more than twenty occasions, Hartlove rubbed her vagina. (Doc. 17-2, Ex. 28, at 48-49). Accordingly, a rational jury could have convicted Hartlove of lewd or lascivious molestation of L.S.

With respect to J.T., Hartlove was convicted of lewd or lascivious molestation, lewd or lascivious conduct, and the lesser-included offense of battery. (*Id.*, Ex. 29, at 241-42). J.T. testified that, when she was under the age of twelve, Hartlove repeatedly touched her vagina and buttocks. (*Id.*, Ex. 28, at 208, 222-23). That testimony was sufficient to prove that Hartlove committed lewd or lascivious molestation. *See* Fla. Stat. § 800.04(5)(a), (b). As for lewd or lascivious conduct, that offense requires proof that "the victim was under the age of sixteen, that the defendant solicited the victim to commit a lewd or lascivious act, and that the defendant was eighteen years of age or older at the time of the offense." *Cleveland v. State*, 135 So. 3d 425, 426 (Fla. 1st DCA 2014). Here, J.T. testified that Hartlove twice asked her to perform oral sex on him, but she "told him it was disgusting and [she] wouldn't do it." (Doc. 17-2, Ex. 28, at 245). That testimony sufficed to prove that Hartlove (a man in his forties) solicited J.T. (a child under the age of sixteen) to "commit a lewd or lascivious act." *Cleveland*, 135 So. 3d at 426. Finally, the prosecution presented ample evidence that Hartlove

committed battery on J.T. by intentionally touching her against her will. *See De Aragon v. State*, 273 So. 3d 26, 29 (Fla. 4th DCA 2019) (defining simple battery as "the intentional touching of another against that person's will"); *see also* Doc. 17-2, Ex. 28, at 208, 222-23.

Hartlove nevertheless contends that the evidence was insufficient because "[t]his case was nothing more than a he said/she said," and "there was no physical evidence, no DNA, no psychological or medical exams, [and] extensive inconsistencies and impeachments." (Doc. 1 at 46). But "[t]he testimony of a single witness, even if uncorroborated and contradicted by other State witnesses, is sufficient to sustain a conviction." *Bussell v. State*, 66 So. 3d 1059, 1061 (Fla. 1st DCA 2011); *see also Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) ("[T]he testimony of the victim alone is constitutionally sufficient to sustain a conviction."); *United States v. Knight*, 381 F. App'x 942, 944 (11th Cir. 2010) ("A federal conviction . . . can be based on the uncorroborated testimony of a single witness."). Moreover, while the victims "may have made inconsistent statements," that "goes to [their] credibility"—and "credibility determinations are within the exclusive province of the jury, not the court conducting federal sufficiency review." *McCarthan v. Jones*, No. 4:15-cv-406-MW-CJK, 2017 WL 5339992, at *15 (N.D. Fla. Oct. 18, 2017), *adopted by* 2017 WL 5319933 (N.D. Fla. Nov. 13, 2017).

Because a rational jury could have found beyond a reasonable doubt that Hartlove committed the offenses of which he was convicted, his sufficiency challenge fails.

## I.   Ground Thirteen—Failure to Properly Handle Arraignment

The prosecution amended the information several times, and Hartlove was ultimately convicted on the fifth amended information. (Doc. 17-2, Exs. 4, 5, 6, 7, 24, 27, 29). According to Hartlove, the court held arraignments for the first and second amended informations, but no arraignment was conducted for the third, fourth, and fifth amended informations. (Doc. 1 at 49). Hartlove contends that trial counsel was ineffective for failing to formally waive arraignment or discuss with him whether he wished to be arraigned on the amended informations. (Doc. 1 at 49-50). This omission allegedly prevented Hartlove from "know[ing] how many counts were added" to the fifth amended information, thus "depriv[ing]" him of the ability to "assist[] counsel in the preparation of his defense." (*Id.* at 49).

The postconviction court rejected this claim on the ground that Hartlove failed to establish "*Strickland* prejudice." (Doc. 17-3, Ex. 58, at 14). The court began by explaining that, under Florida Rule of Criminal Procedure 3.160(b), "a defendant waives any remedy he may have for the State's failure to arraign him if he enters a plea to the information or if he proceeds to trial without objection." (*Id.*) Hartlove, "through counsel, proceeded to trial on the fifth amended information." (*Id.*) As a result, the court held, Hartlove "waived any claim based on a failure to arraign." (*Id.*) Next, the court found that Hartlove did "not allege the failure to arraign prejudiced his defense at trial." (*Id.*) The court noted that "the only difference between the fourth amended and fifth amended information was a change in the commencement of the charged timeframe (July 27, 1999 amended to October 1, 1999)." (*Id.*) "In all other respects,"

32

the court explained, "the victims and the charged offenses remained the same." (*Id.*) Thus, because Hartlove "was aware of the nature of the charges against him," he failed to show prejudice. (*Id.*)

The rejection of this claim was reasonable. "The prejudice prong requires the petitioner to establish a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "counsel's errors [must be] so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. "Applying AEDPA to *Strickland*'s prejudice standard, [this Court] must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [Hartlove]—that there was no substantial likelihood of a different result—was so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin v. Sec'y, Fla. Dep't of Corr.*, 89 F.4th 1308, 1317 (11th Cir. 2024).

Hartlove cannot meet this demanding standard. He appears to contend that, had counsel either formally waived arraignment or discussed the amended informations with him, he would have been in a better position to "assist[] counsel in the preparation of his defense." (Doc. 1 at 49). But Hartlove offers no specifics about the assistance he allegedly would have provided to counsel. Nor does he explain how his defense would have changed had counsel taken the steps he identifies. Hartlove's "vague and conclusory allegations" are insufficient to establish prejudice—that is, "a

33

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1332-33 (11th Cir. 2012); *see also Tatum v. Sec'y, Dep't of Corr.*, No. 6:17-cv-2172-GAP-GJK, 2019 WL 2301600, at *7 (M.D. Fla. May 30, 2019) (rejecting ineffective-assistance claim because "[p]etitioner [had] not explained how his defense to the charge was hindered or how his defense would have changed had counsel not waived an arraignment"). Accordingly, the postconviction court reasonably rejected this claim for lack of prejudice.

### J.   Ground Fourteen—Failure to Object to *Williams* Rule Evidence

Hartlove contends that trial counsel was ineffective for failing to object before trial to the prosecution's notice of intent to offer *Williams* rule evidence.[7] (Doc. 1 at 51-52). In relevant part, the notice indicated that the prosecution would introduce evidence that Hartlove (1) "talk[ed] about sex and sexual behavior with the victims," and (2) "supplied or provided pornography to the victims or allowed and/or encouraged them to look at pornography." (Doc. 17-2, Ex. 23, at 2). At trial, J.T. testified that she first felt uncomfortable around Hartlove when he began "talking to [her] about sex"—specifically, he asked whether she "ever had sex" or would "like to have sex." (*Id.*, Ex. 28, at 219-20). L.S., for her part, testified that Hartlove first showed her adult pornography, "and then it kind of progressed into kiddie porn." (*Id.* at 62).

---

[7] Under the *Williams* rule, evidence of collateral crimes is admissible "[i]f found to be relevant for any purpose save that of showing bad character or propensity." *Williams v. State*, 110 So. 2d 654, 662 (Fla. 1959).

Counsel objected to the reference to "kiddie porn," and the court instructed the jury to "please disregard [L.S.'s] use of the words 'kiddie porn.'" (*Id.* at 69-70, 73). Hartlove now maintains that the victims' testimony was not proper *Williams* rule evidence, and that the "admission of [his] prior bad acts" caused "unfair prejudice." (Doc. 1 at 51-52).

The postconviction court rejected this claim, finding that Hartlove "was not prejudiced by L.S.'s statement regarding 'kiddie porn.'" (Doc. 17-2, Ex. 55, at 6). That determination was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Hartlove cannot show "a reasonable probability that, but for [L.S.'s statement], the outcome at trial would have been different." *Reed*, 767 F.3d at 1261. Hartlove appears to contend that L.S.'s testimony prejudiced him because "possession of child pornography . . . carries with it great animosity." (Doc. 23 at 31). There is no question that the challenged testimony was inflammatory. But "a court hearing an ineffectiveness claim must consider the totality of the evidence before the . . . jury." *Strickland*, 466 U.S. at 695. Here, the victims testified that Hartlove repeatedly subjected them to horrific acts of physical sexual abuse. (*E.g.*, Doc. 17-2, Ex. 28, at 46-54, 62, 91, 222-23, 245). For example, L.S. and J.T. stated that on five separate occasions, Hartlove forced them to play a version of "hide and seek" in which he "would rub his genitals on . . . [their] vagina[s]" if he "caught" them. (*Id.* at 61-62, 226-27). Given that the charged conduct involved highly inflammatory acts of physical sexual abuse, there is no reasonable probability that the

jury would have reached a different verdict had L.S. not made the "kiddie porn" remark. *Cf. United States v. Hersh*, 297 F.3d 1233, 1243 (11th Cir. 2002) (no prejudice from failure to sever child molestation and child pornography charges because "a reasonable jury undoubtedly would have found *both* the evidence of [defendant's] child molestation and the evidence of [his] child pornography very inflammatory"). Moreover, the prejudicial impact of the testimony was lessened by the court's instruction to "disregard [L.S.'s] use of the words 'kiddie porn.'" (Doc. 17-2, Ex. 28, at 73). As the Eleventh Circuit has repeatedly explained, "jurors are presumed to follow the court's instructions." *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) (collecting cases).

The postconviction court did not expressly address the other component of Hartlove's claim—namely, that counsel should have objected to J.T.'s testimony that Hartlove talked about sex with her. (Doc. 17-2, Ex. 55, at 5-6). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). The presumption is rebutted when the evidence clearly shows that the state court "inadvertently overlooked" the federal claim. *Bester v. Warden*, 836 F.3d 1331, 1336 (11th Cir. 2016). In such a case, federal courts review the claim *de novo*. *Id.* at 1337.

Here, even assuming that *de novo* review applies, Hartlove cannot obtain relief because he was not prejudiced by J.T.'s testimony. *See Berghuis v. Thompkins*, 560 U.S.

370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review."). As explained above, the jury heard detailed, highly inflammatory testimony about Hartlove's physical sexual abuse of the victims. (*E.g.*, Doc. 17-2, Ex. 28, at 46-54, 62, 91, 222-23, 245). Given the horrific nature of the charged conduct, there is no reasonable probability that the jury would have reached a different verdict had J.T. not testified that Hartlove "talk[ed] to [her] about sex." (*Id.* at 219-20).

For all these reasons, Hartlove cannot show that he was prejudiced by counsel's failure to object to the allegedly improper *Williams* rule evidence.

### K.   Ground Fifteen—Failure to Object to "Inadmissible Hearsay"

As noted above, J.T. and F.T. testified at trial about an incident in which J.T. entered the master bedroom and discovered F.T. "straddling" Hartlove with "just her underwear on." (Doc. 17-2, Ex. 28, at 229-30, 373-75). Before trial, the prosecution filed a notice of intent to offer child hearsay statements from F.T. about this incident. (*Id.*, Ex. 13). F.T. made the statements during an interview with the Sarasota County Child Protection Team. (*Id.*) The trial court ultimately excluded the child hearsay statements, explaining that it could not "determine if the out-of-court statement[s] [were] reliable" because "the video of the interview" "no longer exist[ed]," and that "to allow said statements would open the door to possible extraneous matters and perhaps allow said statements to become a feature of the case." (*Id.*, Ex. 22).

Hartlove now contends that trial counsel should have objected when J.T. and F.T. described the straddling incident at trial. (Doc. 1 at 54-55). According to Hartlove, the victims' testimony "violated" the pretrial ruling on child hearsay. (*Id.* at 54). Hartlove also faults counsel for failing to argue that he could not "properly impeach" the victims because the transcript of F.T.'s interview "could not be authenticated."[8] (*Id.* at 55; *see also* Doc. 17-2, Ex. 54, at 15).

The postconviction court rejected this claim. (Doc. 17-2, Ex. 55, at 8). It acknowledged that, before trial, "the State served notice of its intent to offer hearsay evidence of F.T.'s 2003 statement made to a Child Protection Team interviewer." (*Id.*) The court also noted that "this hearsay evidence [was ruled] inadmissible." (*Id.*) The court explained, however, that the pretrial ruling "did not bar all evidence of the interaction between [Hartlove] and F.T." (*Id.*) To the contrary, "[a]s participants in the incident, J.T. and F.T. were competent to testify about it and their testimony was not hearsay." (*Id.*) Thus, the court found that "a hearsay objection by defense counsel would have been ineffectual." (*Id.*)

The court then turned to "defense counsel's impeachment of J.T. and F.T. in relation to the 2003 incident." (*Id.*) It noted that it had "carefully examined the direct and cross-examination of these witnesses." (*Id.*) Based on that review, the court found that counsel "adequately confronted the witnesses over inconsistencies between and

---

[8] Hartlove does not elaborate on his assertion that the transcript could not be authenticated.

within their versions of the incident," and that therefore counsel "was not deficient in this regard." (*Id.*)

The postconviction court acted reasonably in rejecting this claim. First, the court correctly held that the pretrial ruling on child hearsay did not bar J.T. or F.T. from testifying at trial about the straddling incident. As noted above, the trial court excluded only the "out-of-court statement[s]" that F.T. made during her forensic interview. (*Id.*, Ex. 22). The prosecution did not seek to admit those hearsay statements at trial. Instead, J.T. and F.T. testified about what they personally observed during the incident. (*Id.*, Ex. 28, at 229-30, 373-75). That testimony "was not hearsay because it was based on [their] personal observations and not on what anyone told [them]." *Linic v. State*, 80 So. 3d 382, 391 (Fla. 4th DCA 2012); *see also Ware v. State*, 197 So. 3d 1147, 1150 (Fla. 2d DCA 2016) (testimony "not hearsay because [it] was based upon [witness's] personal observations and knowledge"). Counsel was not deficient for failing to raise Hartlove's meritless hearsay objection. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

Second, the postconviction court reasonably concluded that counsel was not deficient in cross-examining J.T. or F.T. about the straddling incident. (Doc. 17-2, Ex. 55, at 8). Indeed, counsel impeached F.T. by pointing to inconsistencies between her trial testimony and the statements she made during her forensic interview. For example, F.T. stated at trial that Hartlove was lying on top of the bedding when the incident took place. (*Id.*, Ex. 28, at 410). Counsel sought to impeach F.T. by asking

whether she had told "the lady who did the interview . . . that [Hartlove] wasn't wearing anything because she looked down under the covers." (*Id.*) Likewise, counsel extensively cross-examined J.T. about the incident, eliciting an admission that J.T. had previously "[taken] back [the] accusation and said that it was not true." (*Id.* at 314). In these circumstances, Hartlove cannot "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020).

## L.    Ground Sixteen—Failure to Adequately Oppose Motion *in Limine*

Hartlove contends that trial counsel provided ineffective assistance by failing to properly oppose a motion *in limine* filed by the prosecution. (Doc. 1 at 56-57). The motion concerned L.S.'s accusation that in 2006, her mother's boyfriend—Richard Gill—"peep[ed] into [the] bathroom" while she was undressing. (Doc. 17-2, Ex. 12, at 42-44). L.S. subsequently stated that, although she still believed "somebody" was "peeping . . . in her bathroom," she no longer thought Gill was the culprit. (*Id.* at 44-45). The prosecution moved to exclude this evidence, arguing that the accusation was "not relevant" and did not involve a recantation because L.S. "still honestly believe[d] that somebody was looking in her window." (*Id.* at 43, 45). Hartlove's counsel opposed the motion, explaining that "[i]t [was] important for the jury to hear this" because the incident illustrated a "phenomen[on] . . . [where] L.S. is making accusations against individuals when things don't go her way and then backs off of them when they're investigated." (*Id.* at 47). Counsel supported his position by citing several Florida

appellate cases addressing the admissibility of false accusations of sexual abuse. (*Id.* at 43).

The court ultimately granted the motion *in limine* and excluded any reference to L.S.'s allegation against Gill. (*Id.*, Ex. 17). The court explained that, in the cases cited by defense counsel, "the victim repudiated and later admitted the accusations were false." (*Id.*) Here, by contrast, L.S. "did not repudiate the fact that the incident occurred; merely that it was [Gill] who was the person who was the peeping tom." (*Id.*)

Hartlove now contends that trial counsel should have pursued "other avenues of defense against" the State's motion *in limine*. (Doc. 1 at 56). According to Hartlove, counsel should have mentioned that in 2001, L.S. "accused her mother . . . of beating her"—an accusation she subsequently retracted. (*Id.* at 57). Hartlove maintains that counsel "could've argued that both of these allegations"—the one against Gill and the one against L.S.'s mother—"would be admissible . . . to show L.S.'s motive to make an allegation when things don't go her way." (*Id.*) Hartlove also faults counsel for failing to argue that the allegations could have been admitted through reports prepared by the Department of Children and Families ("DCF"). (*Id.*) Such reports, in Hartlove's view, would have been admissible under the public records hearsay exception. (*Id.*) Hartlove alleges that counsel's conduct prejudiced him because "the jury got to hear that L.S. didn't like [Gill], but they didn't get to hear what she did in retribution." (*Id.*)

The postconviction court rejected this claim, deeming it "conclusively refuted by the record." (Doc. 17-2, Ex. 55, at 9). The court explained that "[d]uring the hearing on the motion, defense counsel clearly argue[d] the jury should learn of L.S.'s allegation against [] Gill because it [was] evidence of 'phenomena' whereby L.S. makes accusations against individuals when things aren't going her way, but then backs off from them when they're investigated." (*Id.*) Moreover, "it [was] clear from the [trial court's] order granting the motion that the key consideration was that L.S. had not recanted her accusation and admitted that it was false." (*Id.*) Instead, the trial court explained, L.S. had "mistakenly believed that [] Gill was the person outside the bathroom window." (*Id.*) Accordingly, the postconviction court held that Hartlove's "supplemental argument" "would not have changed this legal analysis," and that counsel thus did not render ineffective assistance. (*Id.*)

The rejection of this claim was reasonable. *Strickland* requires courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Moreover, because the postconviction court rejected Hartlove's claim on the merits, he cannot prevail unless he shows that "no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks*, 975 F.3d at 1176.

42

Hartlove cannot overcome the "doubly deferential" standard of review required by *Strickland* and AEDPA. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Counsel vigorously opposed the State's motion *in limine*, arguing that "[i]t [was] important for the jury to hear" about L.S.'s accusation against Gill. (Doc. 17-2, Ex. 12, at 47). Counsel maintained that the incident showed L.S.'s propensity for "making accusations against individuals when things don't go her way and then back[ing] off of them when they're investigated." (*Id.*) And counsel cited Florida case law to support his position. (*Id.* at 43). In these circumstances, Hartlove cannot show that counsel's course of action "was so patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F.3d at 1099.

Hartlove says that counsel should have raised additional arguments in opposition to the motion *in limine*. (Doc. 1 at 56-57). But counsel "is not required to present every nonfrivolous" argument; indeed, "[g]ood advocacy requires winnowing out some arguments . . . to stress others." *Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013); *see also McNamee v. Sec'y, Fla. Dep't of Corr.*, No. 18-14494-CIV, 2021 WL 1222665, at *9 (S.D. Fla. Feb. 1, 2021) ("A lawyer does not give ineffective assistance by failing to pursue every conceivable argument."), *adopted by* 2021 WL 1215786 (S.D. Fla. Mar. 31, 2021). As noted above, the trial court excluded L.S.'s allegation against Gill because L.S. "did not repudiate the fact that the incident occurred; merely that it was [Gill] who was the person who was the peeping tom." (Doc. 17-2, Ex. 17). Hartlove's proposed arguments would have done nothing to undermine this reasoning. He faults counsel for failing to argue that L.S.'s allegation

43

could come in through the DCF reports, which allegedly qualified for the public records exception to the hearsay rule. (Doc. 1 at 57). But the issue was not whether L.S.'s allegation was inadmissible hearsay; the issue was whether it qualified as proper impeachment material in the first place. Likewise, there is no basis to conclude that the trial court would have reached a different conclusion had it learned of L.S.'s unrelated accusation against her mother. The omission of these arguments did not deprive Hartlove of the effective assistance of counsel. *See Dell*, 710 F.3d at 1281 ("[I]t is quite difficult to establish that the omission of any particular argument resulted in ineffective assistance . . . .").

For all these reasons, Hartlove fails to show that "no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." *Franks*, 975 F.3d at 1176. Accordingly, the postconviction court reasonably rejected his ineffective-assistance claim.

### M.    Ground Seventeen—Failure to Object to "Uncharged Collateral Acts"

Hartlove contends that trial counsel rendered ineffective assistance by failing to object and move for a mistrial when L.S. and J.T. testified to "uncharged acts" of sexual abuse. (Doc. 1 at 59-60). Hartlove was charged with abusing L.S. and J.T. from 1999 to 2003. (Doc. 17-2, Ex. 27, at 230-32). During that time, both victims were under the age of twelve. (*Id.*) At the October 2009 trial, the prosecutor asked L.S., "How long ha[s] it been since [Hartlove] last molested you?" (*Id.*, Ex. 28, at 89). L.S. responded, "About four years." (*Id.*) Thus, L.S. appears to have testified that Hartlove molested her in 2005—two years after the timeframe alleged in the information. Similarly, J.T.

stated that some acts of sexual abuse "possibly" took place after she turned twelve in May 2003. (*Id.* at 246).

Hartlove argues that counsel should have objected and moved for a mistrial on the ground that the prosecution failed to give pretrial notice that it would introduce these "uncharged acts." (Doc. 1 at 59-60). According to Hartlove, he suffered prejudice because the victims' statements "created a risk that [his] conviction was based on bad character or propensity to commit crimes." (*Id.* at 60).

The postconviction court rejected this claim because Hartlove failed to establish "*Strickland* prejudice." (Doc. 17-3, Ex. 58, at 3-4). The court reasoned that, "taken in context, L.S. and J.T.'s limited reference to [Hartlove's] sexual contact with them outside the timeframe of the [i]nformation did not amount to the admission of uncharged collateral bad acts." (*Id.* at 3). According to the court, "[t]he record show[ed] [that] the references were brief and general (as opposed to [the victims'] more detailed testimony about charged acts) and they were not made a feature of the State's case." (*Id.* at 2-3). Thus, Hartlove suffered no prejudice, and a mistrial was not warranted. (*Id.*)

The postconviction court reasonably rejected this claim for lack of prejudice. To establish prejudice, Hartlove must show "a reasonable probability" that, but for the victims' two fleeting references to uncharged conduct, "the outcome at trial would have been different." *Reed*, 767 F.3d at 1261. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on

the outcome of the proceeding." *Id.* at 693. Instead, "counsel's errors [must be] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Thus, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the . . . jury." *Id.* at 695. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695-96.

The postconviction court's finding of no prejudice was not "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Mungin*, 89 F.4th at 1317. The information charged Hartlove with abusing the victims from 1999 to 2003, when both were under the age of twelve. (Doc. 17-2, Ex. 27, at 230-32). L.S. stated that the last time Hartlove molested her was "[a]bout four years" before the October 2009 trial. (*Id.*, Ex. 28, at 89). And J.T. said that Hartlove had "possibly" subjected her to sexual abuse after she turned twelve. (*Id.* at 246). But neither victim specifically described any incidents that may have taken place after the timeframe alleged in the information. Furthermore, the prosecution did not highlight the challenged testimony in closing argument. (*Id.* at 934-46, 995-1014). By contrast, both L.S. and J.T. vividly recounted numerous horrific acts of sexual abuse that occurred during the charged timeframe. (*E.g.*, *id.* at 46-54, 62, 91, 218-23, 245, 794-95). In these circumstances, a reasonable jurist could conclude that Hartlove suffered no prejudice from the victims' brief, isolated references to unspecified sexual abuse that may have

taken place outside the timeframe of the information.[9] *See Morgan v. Jackson*, No. 06-cv-13947, 2009 WL 3190697, at *12 (E.D. Mich. Sept. 29, 2009) (no prejudice from failure to object to "uncharged acts" because "[t]he references to inadmissible evidence were relatively few, were not detailed, and were not relied upon by the prosecution to make a character or propensity argument").

### N. Ground Eighteen—Failure to Present "Exculpatory Evidence"

Hartlove argues that trial counsel provided ineffective assistance by failing to introduce two pieces of allegedly exculpatory evidence. (Doc. 1 at 62-63). First, Hartlove faults counsel for not presenting video footage of L.S.'s interview with the Child Protection Team. (*Id.* at 62). According to Hartlove, the footage would have shown L.S.'s "demeanor and body language," which the jury could have compared to her demeanor at trial. (*Id.*) Second, Hartlove faults counsel for failing to present a controlled call between him and L.S. in which he "vehemently denied" the allegations of sexual abuse. (*Id.*)

The postconviction court rejected this claim. (Doc. 17-2, Ex. 55, at 17-18). It held that, because both "the controlled call and [the Child Protection Team] interview

---

[9] In addition, counsel was not deficient for failing to seek a mistrial. The postconviction court ruled that a motion for mistrial would not have succeeded. (Doc. 17-3, Ex. 58, at 2-3). This Court is bound by that determination of Florida law. *See Fernandez v. Sec'y, Dep't of Corr.*, No. 8:16-cv-2565-CEH-SPF, 2019 WL 3958269, at *8 (M.D. Fla. Aug. 22, 2019) ("Whether a motion would have succeeded under Florida's standard for granting a mistrial is a question of state law."). Moreover, contrary to Hartlove's assertion, the challenged statements did not constructively amend the information because the jury was properly instructed that Hartlove was "not on trial for a crime, wrong, or act that [was] not included in the charging document or the information." (Doc. 17-2, Ex. 28, at 379; *see also United States v. Fattah*, 858 F.3d 801, 818 (3d Cir. 2017) (introduction of "evidence of other crimes does not constructively amend the indictment when the jury is properly instructed" about proper uses of prior-bad-act evidence).

were inadmissible," counsel's "failure to seek their introduction into evidence did not prejudice" Hartlove. (*Id.* at 18). The court explained that the interview was inadmissible hearsay because (1) Hartlove did not "allege that any statements by L.S. during the interview were admissible at trial as prior inconsistent statements," and (2) the interview could not come in under the child hearsay rule because that exception was "for the sole benefit of the State." (*Id.*) Likewise, Hartlove's "out-of-court statement[s]" during the controlled call were inadmissible hearsay. (*Id.*) The court acknowledged that, "under certain circumstances," "Florida law permits the use of a prior consistent statement of a witness who testifies at trial." (*Id.*) But such a statement "is inadmissible if it is made *after* the witness's motive to lie arose." (*Id.*) Here, the court noted, Hartlove "was accused of sexual misconduct with L.S. and J.T. between 1999 and 2003." (*Id.*) Because the controlled call took place in 2008, any statements during that call "were made years after [Hartlove's] motive to lie arose," and thus did not qualify for the hearsay exception. (*Id.*)

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). That is the case here. The postconviction court found that Hartlove suffered no prejudice because, as a matter of Florida law, the controlled call and the forensic interview were inadmissible hearsay. (Doc. 17-2, Ex. 55, at 17-18). Thus, the state court "already has told us how the issues would have been resolved under Florida state law had [counsel]

48

done what [Hartlove] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). This Court is bound to defer to that determination. *See, e.g.*, *Zeigler v. Sec'y, Dep't of Corr.*, No. 8:17-cv-286-KKM-TGW, 2023 WL 6196862, at *10 (M.D. Fla. Sept. 22, 2023) ("[T]o the extent that the trial court's ruling was based on a determination that the statement was . . . impermissible hearsay under Florida's evidentiary law, this Court must defer to the state court's interpretation of state law.").

In short, the postconviction court "authoritatively decided as a matter of [Florida] law" that Hartlove's proposed evidence was inadmissible. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1351 (11th Cir. 2024). It is well established that a petitioner is not "prejudiced by his counsel's failure" to "raise a meritless claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014). Thus, the postconviction court reasonably concluded that Hartlove suffered no prejudice from counsel's failure to introduce the forensic interview or the controlled call.

## O.   Ground Nineteen—Failure to "Adequately Argue" for Admissibility of Hearsay Testimony

Hartlove contends that trial counsel was ineffective for failing to "adequately argue" for the admissibility of an allegedly favorable hearsay statement. (Doc. 1 at 64). At trial, Hartlove's counsel indicated his intention to call a DCF investigator as a witness. (Doc. 17-2, Ex. 28, at 897-98). The investigator, Dan Sansiveri, would testify about an allegation he heard from A.T. (J.T. and F.T.'s brother). Specifically, A.T. told Sansiveri that F.T. had informed him (A.T.) that J.T. had threatened F.T. with

violence if F.T. recanted her allegations of sexual abuse. (*Id.* at 897; *see also id.*, Ex. 55, at 10). Defense counsel argued that the statement was not hearsay because it was offered to show F.T.'s "state of mind" when she disclosed the threat to her brother. (*Id.* at 899). The court excluded the statement as "hearsay on hearsay" to which no "exception" applied. (*Id.* at 899-900).

According to Hartlove, counsel should have argued that Sansiveri's testimony was admissible under a variety of hearsay exceptions. (Doc. 1 at 64-66). The postconviction court held that counsel was not deficient for failing to raise these arguments because they would not have led to a different ruling. (Doc. 17-2, Ex. 55, at 10-12). For example, the court rejected Hartlove's assertion that counsel "could have argued the statement was admissible . . . as an admission offered against a party." (*Id.* at 11). The court explained that "[t]his hearsay exception [was] plainly inapplicable since the parties in this case [were] [Hartlove] and the State[,] and A.T. did not make the statement to [] Sansiveri as an agent for either party, nor ha[d] either party adopted the statement as its own." (*Id.*) Likewise, the court held that "the statement was not a prior inconsistent statement for purposes of impeachment" because A.T. "testified that he did not remember making the statement to [] Sansiveri." (*Id.* at 12). The court rejected Hartlove's other proposed theories of admissibility, ultimately concluding that "counsel was not deficient for failing to raise the arguments [Hartlove] urged." (*Id.* at 10-12).

That ruling was reasonable. As noted above, "the issue of ineffective assistance . . . is one of constitutional dimension," but a court "must defer to the state's

50

construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney*, 876 F.3d at 1295. Here, the postconviction court found that Hartlove's proposed theories of admissibility were meritless under Florida law, and that therefore any "argument[s] for admissibility" on these grounds "would have been to no avail." (Doc. 17-2, Ex. 55, at 10-12). That determination is binding on federal habeas review. *See, e.g.*, *Zeigler*, 2023 WL 6196862, at *10 ("[T]o the extent that the trial court's ruling was based on a determination that the statement was . . . impermissible hearsay under Florida's evidentiary law, this Court must defer to the state court's interpretation of state law."). Because the postconviction court authoritatively decided that Hartlove's arguments were meritless under Florida law, counsel was not deficient for failing to pursue them. *See Freeman*, 536 F.3d at 1233 (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

### P.   Ground Twenty—Failure to Properly Address "Sequestration Violation"

Hartlove asserts that counsel was ineffective for failing to properly address a violation of the rule of sequestration that allegedly occurred at trial.[10] (Doc. 1 at 67-68). Shortly before the State rested, the parties discussed the testimony of James Powell, a potential defense witness. (Doc. 17-2, Ex. 28, at 607). The prosecutor stated:

> There's a Mr. James Powell outside, and I just, this may be premature, Judge, but I just spoke with him about what he might testify to. I think there's some things that he's going to say that are not allowed. . . . The most of what I got out of him was that he thinks that [J.T. is] a liar, he

---

[10] "The rule of sequestration prohibits witnesses from conversing with one another during the entire course of the trial." *United States v. Blasco*, 702 F.2d 1315, 1327 (11th Cir. 1983). Hartlove's counsel invoked the rule of sequestration immediately before opening statements. (Doc. 17-2, Ex. 28, at 3).

used to date her, she's a liar. I think [defense counsel] is well aware that that can't come in. But he said, Well, I know this stuff with [Hartlove] didn't happen because she's a liar, and that wouldn't happen, and *I heard a conversation between [J.T.] and [F.T.], where [J.T.] whispered something in [F.T.'s] ear and in which she said what do I say*.

(*Id.* at 607-08 (emphasis added)). The prosecutor clarified that Powell would "interpret that to mean that [J.T.] was telling [F.T.] to lie." (*Id.* at 608). The court deferred ruling on the admissibility of Powell's testimony. (*Id.*) In any event, defense counsel did not call Powell as a witness, and the alleged conversation between J.T. and F.T did not come up again at trial.

Hartlove contends that counsel should have "immediately objected" and requested an "inquiry to determine" whether a "sanction should be levied" for J.T. and F.T.'s alleged sequestration violation. (Doc. 1 at 67). He also faults counsel for failing to "recall J.T. and F.T. so the jury could hear of this violation and weigh their credibility." (*Id.*) According to Hartlove, "[t]here is a reasonable probability [that] the outcome would've been different had the jury heard of J.T. and F.T.'s discussion in the hall during trial." (*Id.*)

The postconviction court held an evidentiary hearing on this claim. (Doc. 17-3, Ex. 59). The hearing took place in April 2019—almost ten years after the October 2009 trial. (*Id.* at 1). Powell testified that he "believe[d] [he] went to court in 2009," but he did not "remember . . . a trial or anything like that." (*Id.* at 6). Hartlove's trial counsel confirmed that he did not ask the court "to make an inquiry" about any potential violation of the rule of sequestration. (*Id.* at 14). He could not remember why he did not call Powell as a witness: "I don't know if I learned something more. I don't know

if I—conferring with trial counsel, if it just didn't seem like it was going to be very powerful evidence." (*Id.* at 16). The prosecutor, for her part, stated that she could not "remember" whether Powell told her that the conversation between J.T. and F.T. had taken place in the hallway outside the courtroom. (*Id.* at 50).

After the hearing, the postconviction court rejected Hartlove's claim in a written order. (*Id.*, Ex. 60, at 2-5). The court found that "a conversation occurred outside the courtroom between [the prosecutor] and [] Powell." (*Id.* at 4). The court noted, however, that "the sole description of the conversation [was] the hearsay account of [the prosecutor] found at page 608 of the trial transcript." (*Id.*) Thus, "[b]ecause no other evidence on this subject was presented," the court held that Hartlove "failed to meet the burden of proving that [counsel's] performance was deficient." (*Id.*)

The court also ruled that, "even if deficient performance were proven," Hartlove failed to establish "*Strickland* prejudice." (*Id.*) The court acknowledged that "this case involved a credibility contest between [Hartlove] and his accusers, J.T., L.S., and F.T." (*Id.*) As the court explained, Hartlove "portrayed J.T. to the jury as a manipulative bully who threatened [F.T.] and colluded with her to make false allegations against [Hartlove] in order to break up his relationship with the girls' mother." (*Id.* at 4-5). The court noted that "counsel vigorously cross-examined J.T. and F.T. regarding their claimed collusion," that "F.T. was [called as a defense witness and] further questioned about her collusion with J.T.," and that another defense witness "testified to F.T.'s disclosure that J.T. had threatened F.T. to falsely accuse" Hartlove. (*Id.* at 5). Based on this testimony, the court found that "the defense theory

53

of collusion between J.T. and F.T. was adequately presented to the jury." (*Id.*) Thus, "presentation of another [incident] of collusion between the witnesses would not have likely changed the outcome of the trial in favor of" Hartlove. (*Id.*)

The postconviction court acted reasonably in rejecting this claim. First, the court's ruling on the performance prong was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990). Furthermore, Hartlove bears the "burden" of proving "the facts necessary to demonstrate his counsel's performance was constitutionally defective." *Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008). "Because of this burden, when the evidence is unclear or counsel cannot recall specifics about his actions due to the passage of time and faded memory, [courts] presume counsel performed reasonably and exercised reasonable professional judgment." *Id.; see also Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999) ("[W]here the record is incomplete or unclear about [counsel's] actions, [courts] will presume that he did what he should have done, and that he exercised reasonable professional judgment.").

Hartlove's claim rests on the assertion that J.T. and F.T. violated the rule of sequestration. But the only evidence for the alleged violation was the prosecutor's account of her conversation with Powell. According to the prosecutor, Powell said that, at some unspecified time, he "heard a conversation between [J.T.] and [F.T.],

where [J.T.] whispered something in [F.T.'s] ear and in which she said what do I say."
(Doc. 17-2, Ex. 28, at 608). It is unclear, however, whether the conversation between
J.T. and F.T. took place in the hallway outside the courtroom after the rule of
sequestration had been invoked. The prosecutor's statement did not specify when or
where the victims' conversation occurred. Moreover, as the postconviction court
noted, Hartlove presented "no other evidence on this subject." (Doc. 17-3, Ex. 60, at
4). Indeed, none of the witnesses at the evidentiary hearing were able to shed light on
the matter. Because an "ambiguous or silent record is not sufficient to disprove the
strong and continuing presumption" of competent representation, a reasonable jurist
could conclude that Hartlove failed to prove that counsel was deficient. *Chandler v.
United States*, 218 F.3d 1305, 1315 n.15 (11th Cir. 2000); *see also Romine v. Head*, 253
F.3d 1349, 1357 (11th Cir. 2001) ("Where . . . the evidence does not clearly explain
what happened, or more accurately why something failed to happen, the party with
the burden loses.").

Second, the postconviction court reasonably rejected Hartlove's claim for lack
of prejudice. "The prejudice prong requires the petitioner to establish a reasonable
probability that, but for counsel's errors, the outcome at trial would have been
different." *Reed*, 767 F.3d at 1261. "Applying AEDPA to *Strickland*'s prejudice
standard, [this Court] must decide whether the state court's conclusion that [counsel's]
performance . . . didn't prejudice [Hartlove]—that there was no substantial likelihood
of a different result—was so obviously wrong that its error lies beyond any possibility
for fairminded disagreement." *Mungin*, 89 F.4th at 1317.

55

Hartlove cannot satisfy his burden. As the postconviction court explained, "the defense theory of collusion between J.T. and F.T. was adequately presented to the jury." (Doc. 17-3, Ex. 60, at 5). For example, one defense witness testified that F.T. "told [her] that [J.T.] had threatened . . . to beat [F.T.] up if [F.T.] didn't go along with" J.T.'s allegations of sexual abuse. (Doc. 17-2, Ex. 28, at 720). Counsel cross-examined J.T. and F.T. about this alleged threat. (*Id.* at 312-13, 617). Hartlove, for his part, testified that J.T. was "known to bully" F.T. (*Id.* at 854). Furthermore, counsel argued to the jury that J.T. "was a manipulator" who "knew how to influence and get away with it," that J.T. was "behind the making" of F.T.'s allegations, and that F.T. was a "little girl" who was "very easy to influence improperly." (*Id.* at 29, 37, 973). In these circumstances, a reasonable jurist could agree with the postconviction court that "presentation of another [incident] of collusion between the witnesses would not have [a reasonable likelihood of] chang[ing] the outcome of the trial in favor of" Hartlove.[11] (Doc. 17-3, Ex. 60, at 5; *see also Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.")).

---

[11] In addition, even if a sequestration violation had occurred, the victims' testimony would not have been excluded absent evidence that "the rule violation occurred with the knowledge or by the connivance of the" prosecution. *Steinhorst v. State*, 412 So. 2d 332, 336 (Fla. 1982). There is no such evidence here.

**Q.    Ground Twenty-Two—Failure to Object to "Improper Authentication" of Video and Transcript of Interview**

Hartlove contends that trial counsel should have objected to the State's alleged failure to "properly authenticate" the redacted video and transcript of his interview with law enforcement. (Doc. 1 at 70-72). Before trial, counsel moved to exclude the entire interview, arguing that it consisted of "nothing more than the detective's opinions and irrelevant aspects of [Hartlove's] sexual experiences." (Doc. 17-2, Ex. 9, at 94). At a hearing on the motion, the parties agreed to confer about redacting irrelevant portions of the interview. (*Id.*, Ex. 12, at 8-9). At trial, the prosecution introduced a redacted version of the interview through the detective who conducted it. (*Id.*, Ex. 28, at 477-79). The prosecutor explained during a bench conference that the video was redacted, and that the jury would receive a redacted version of the transcript. (*Id.* at 469-70, 477-78). The detective testified that the video was "an accurate representation of [his] conversation with" Hartlove. (*Id.* at 476). Before the video was played, the court instructed the jury that (1) "[t]he recording is the evidence and the transcript being provided to you is only as a guide to help you follow as you listen to the recording," (2) "[t]he transcript is not evidence [of] what was actually said or who said it," and (3) "[c]ertain portions of this recording have been deleted because they are not relevant to this case." (*Id.* at 480).

Hartlove now maintains that counsel should have objected to the redacted video and transcript on the ground that the prosecution failed to properly authenticate either item. (Doc. 1 at 70-71). According to Hartlove, the detective's testimony did "not

reflect that he had reviewed the redacted [video]" or transcript. (*Id.*) Hartlove also faults counsel for failing to object that the redacted video had not been "verified pretrial" to determine "whether the editing made the video choppy." (*Id.* at 71). Furthermore, Hartlove alleges that counsel should have pointed out the trial court's failure to "make a pretrial determination of the accuracy of the" redacted transcript. (*Id.*) Finally, Hartlove complains that counsel "allowed" the prosecution to present the jury with a "duplicate" page of the redacted transcript. (*Id.* at 71-72). This page contained Hartlove's statement that he used to keep pornographic magazines "under the bed or under the mattress," but subsequently "[threw] them out" after discovering that the victims had "found them." (Doc. 17-2, Ex. 28, at 499-500).

The postconviction court rejected this claim. (*Id.*, Ex. 55, at 15-16; Doc. 17-3, Ex. 58, at 9-12). It noted that the video "was admitted into evidence through the testimony of [the detective], who testified that he recently reviewed the [video] and it [was] an accurate representation of his interview" with Hartlove. (Doc. 17-2, Ex. 55, at 16). The court held that this "testimony adequately authenticated the [video]." (*Id.*) The court also found it "clear from the record that the parties, the [trial court], and [the detective] were all addressing the redacted versions of the [video] and the transcript." (*Id.*)

Next, the court held that Hartlove failed to establish "*Strickland* prejudice." (Doc. 17-3, Ex. 58, at 12). The court found it "noteworthy that after viewing the redacted [video] during the retrial," Hartlove did "not allege the jury heard or read any statements ruled inadmissible or that the [video] was 'choppy.'" (*Id.* at 11). Likewise,

Hartlove failed to "allege any discrepancies or inconsistencies between the redacted [video] and the redacted transcript." (*Id.*) The court also noted that the jury had received a "cautionary instruction regarding [its] use of the redacted transcript." (*Id.*) "With regard to the duplicate page [] of the redacted transcript," the court observed that "the portion of the [video] referencing pornographic magazines was played once for the jury." (*Id.* at 12). Hartlove did not "allege [that] the statement regarding the magazines should have been redacted from the [video] and the transcript." (*Id.*) In any event, the court explained, Hartlove "portray[ed] himself [in the statement] as taking affirmative steps to protect the children from exposure to adult material." (*Id.*) Lastly, the court rejected as "speculative" Hartlove's claim that "the duplicate page render[ed] the entire redacted transcript unreliable." (*Id.*)

The rejection of this claim was reasonable. A federal court "must defer to the state's construction of its own law when the validity of [an ineffective-assistance] claim . . . turns on state law." *Pinkney*, 876 F.3d at 1295. Applying Florida law, the postconviction court held that the detective properly authenticated the redacted video of his interview with Hartlove. (Doc. 17-2, Ex. 55, at 16). That determination is binding here. *See Campana v. Sec'y, Dep't of Corr.*, No. 18-13236-K, 2019 WL 3545591, at *1 (11th Cir. Jan. 31, 2019) ("[T]he state court's determination that the cell phone records were properly authenticated was entitled to deference."). Thus, any objection to the redacted video's authenticity would have failed, and counsel was not deficient for failing to raise the issue. *See Freeman*, 536 F.3d at 1233 (noting that "[a] lawyer cannot be deficient for failing to raise a meritless claim").

59

As for the rest of Hartlove's allegations, the postconviction court reasonably concluded that he failed to establish prejudice—that is, "a reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed*, 767 F.3d at 1261. Hartlove says that counsel should have objected to the trial court's failure to determine before trial (1) whether "the editing made the [redacted] video choppy" and (2) whether the redacted transcript was "accura[te]." (Doc. 1 at 71). But there is no evidence that the redacted video was "choppy," nor is there any basis to conclude that the redacted transcript contained inaccuracies. Hartlove's "claim of prejudice" cannot rest on "mere speculation" about potential issues with the video or transcript. *Fuqua v. Sec'y, Dep't of Corr.*, 409 F. App'x 243, 246 (11th Cir. 2010). Additionally, there is no "reasonable probability" that the jury's receipt of a duplicate page of the transcript had any effect on the verdict. *Reed*, 767 F.3d at 1261. Finally, Hartlove fails to show that, "had his attorney objected to the authentication of the [redacted transcript], the State would not have been able to adduce testimony sufficiently establishing the proper foundation" for providing it to the jury.[12] *Hills v. Crews*, No. 3:12-cv-28-LAC-EMT, 2013 WL 4017331, at *10 (N.D. Fla. Aug. 7, 2013).

---

[12] Regardless, even if the jury had not received the transcript, it still would have seen the video of the interview. As the postconviction court noted, Hartlove failed to identify "any discrepancies or inconsistencies between the redacted [video] and the redacted transcript." (Doc. 17-3, Ex. 58, at 11). There is thus no reasonable probability that the jury would have reached a different verdict had counsel successfully objected to the redacted transcript.

Thus, the postconviction court reasonably rejected Hartlove's claim of ineffective assistance.[13]

## R.    Ground Eleven—Cumulative Prosecutorial Misconduct

In Ground Eleven, Hartlove lists several instances of alleged prosecutorial misconduct. (Doc. 1 at 43-44). Many of these claims raise issues that were fully addressed above. Hartlove repeats his *Brady* and *Giglio* claims, which this Court rejected in its discussion of Grounds Six and Eight, respectively. (*Id.* at 43). Hartlove also contends that the prosecution committed misconduct by introducing improper *Williams* rule evidence—specifically, J.T.'s testimony that Hartlove talked about sex with her, and L.S.'s testimony that Hartlove showed her child pornography. (*Id.*) For the reasons explained above in connection with Ground Fourteen, this claim fails because Hartlove cannot show "more than a reasonable possibility that [the challenged testimony] contributed to [his] conviction." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012). Next, Hartlove claims that the prosecution violated a pretrial ruling on child hearsay by allowing J.T. and F.T. to testify about the incident in which J.T. saw F.T. straddling Hartlove. (Doc. 1 at 43). But, as explained above in connection with Ground Fifteen, the prosecution did not violate the child hearsay ruling because J.T. and F.T. testified about the incident based on their personal

---

[13] Hartlove appears to contend that the "original transcript" was not properly "authenticated" because the "transcriptionist's signature was not verified as an approved court or civil court reporter." (Doc. 1 at 72). The postconviction court held, however, that Florida law did not require verification or "notarization" of the "transcriptionist's signature." (*Id.*) That state-law determination is binding on this Court. Accordingly, counsel was not deficient for failing to object to the "original transcript" on this basis.

knowledge. Finally, Hartlove repeats his claim that the prosecution violated his right to remain silent by eliciting testimony that he refused to voluntarily go to the police station. (*Id.* at 44). For the reasons set forth in the discussion of Ground Five, that claim is both procedurally defaulted and meritless.

As for the other instances of alleged prosecutorial misconduct, Hartlove sought to raise them in his Rule 3.850 motion, but the postconviction court rejected each as procedurally barred. (Doc. 17-2, Ex. 54, at 30-32; Doc. 17-2, Ex. 55, at 7; Doc. 17-3, Ex. 58, at 12-13). The court explained that these claims of "prosecutorial misconduct could and should have been raised on direct appeal and thus [were] procedurally barred from consideration in a postconviction motion." (Doc. 17-3, Ex. 58, at 13; *see also* Doc. 17-2, Ex. 55, at 7). Because "the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds," these claims are procedurally defaulted. *LeCroy*, 421 F.3d at 1260 n.25. Hartlove fails to offer any basis to excuse the default.[14] Accordingly, the remaining instances of alleged prosecutorial misconduct are barred from federal habeas review.[15]

---

[14] Hartlove cannot excuse the default on the ground that appellate counsel was ineffective for failing to raise these instances of prosecutorial misconduct on direct appeal. Hartlove did not argue in state court that appellate counsel was deficient on this basis. Thus, any such ineffective-assistance claim "is procedurally defaulted and cannot be considered as cause for the default of [Hartlove's] trial court error claim[s]." *Dowling*, 275 F. App'x at 847.

[15] To the extent that Hartlove seeks to raise a freestanding claim of cumulative error, he is not entitled to relief. A cumulative-error claim "must fail" where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, each individual claim of error is meritless, so any freestanding cumulative-error claim necessarily fails.

It is therefore **ORDERED** that Hartlove's petition (Doc. 1) is **DENIED**. The

**CLERK** is directed to enter judgment against Hartlove and to **CLOSE** this case.

### Certificate of Appealability
### and Leave to Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Hartlove is not entitled to a certificate of

appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement

to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a

certificate of appealability must first issue. *Id.* "A certificate of appealability may issue

. . . only if the applicant has made a substantial showing of the denial of a constitutional

right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, Hartlove must show

that reasonable jurists would find debatable both (1) the merits of the underlying claims

and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v.

McDaniel*, 529 U.S. 473, 484 (2000). Hartlove has not made the requisite showing.

Finally, because Hartlove is not entitled to a certificate of appealability, he is not

entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on October 29, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Petitioner, *pro se*

63